# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Gina Gail Celaya, | ) |
| Petitioner, | ) CV 01-622-TUC-DCB |
| v. | ) |
| Terry Stewart, et al., | ) |
| Respondents. | ) **ORDER** |

The Court dismisses grounds two and three, and grants habeas relief on ground one of the Second Amended Petition. Respondents shall release Petitioner from custody unless, within 90 days, retrial proceedings are commenced.

## BACKGROUND

During the late night hours of December 21, 1992, Petitioner Celaya shot Trinidad Lopez, age 51. He died. She was 14 years old and claimed she shot him in self-defense. She was transferred to adult court. A jury tried and convicted her of first degree murder and armed robbery. She was sentenced to a term of 25 years to life on the murder charge and a consecutive term of 10.5 years for armed robbery. On direct appeal, the consecutive sentence was reversed, and she was resentenced to a concurrent term of prison for the armed robbery offense.

On November 28, 2001, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody, pursuant to Title 28, U.S.C. § 2254. This Petition was held in abeyance while she exhausted unexhausted claims, and she subsequently filed a First Amended Petition on January 30, 2002, and a Second Amended Petition on September 26,

2007. Respondents filed an Answer on March 3, 2008. Petitioner filed a Reply on June 16, 2008.

On August 4, 2008, the Petition was referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation (R&R) in accordance with 28 U.S.C. § 636(b)(1) and LRCiv. 72, Rules of Practice of the United States District Court for the District of Arizona.

On August 27, 2009, Judge Velasco issued the R&R. He recommends that this Court find the Petition is not barred by the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and that this Court grant ground one of the Petition and dismiss grounds two and three. Both parties filed written objections to the R&R, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ.P.72(b). The matter is ready for final disposition by this Court.

## STANDARD OF REVIEW

The duties of the district court in connection with a R&R by a Magistrate Judge are set forth in Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed.R.Civ.P. 72(b), 28 U.S.C. § 636(b)(1). Where the parties object to a R&R, a district court judge "shall make a *de novo* determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 149-50 (1985). When no objections are filed, the district court need not review the R&R *de novo*. *Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir.2005); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121-22 (9th Cir.2003) (en banc).

This Court's ruling is a *de novo* determination as to those portions of the R&R to which there are objections. 28 U.S.C. § 636(b)(1)(C). To the extent that no objection has been made, arguments to the contrary have been waived. *See* 28 U.S.C. § 636(b)(1)(A) (objections are waived if they are not filed within ten days of service of the R&R), *see also McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980) (failure to object to magistrate's report waives right to do so on appeal); Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974) (when no

1 timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation).

## STATUTE OF LIMITATIONS

A one-year limitation period applies to petitions for a writ of habeas corpus by a person in custody pursuant to a judgment of a state court. 28 U.S.C. § 2244(d). Under the AEDPA, a state prisoner must file the petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A). "The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation[.]" 28 U.S.C. § 2244(d)(2).

The Court looks to the rules of the state court to determine when a state decision on a post-conviction petition is final to determine whether the petition is still pending for purposes of tolling the statute of limitations under § 2244(d). (R&R at 17.) In Arizona, a claim for post-conviction relief has been exhausted if it is presented to the court of appeals. *Id.* at 8 (citations omitted). A discretionary petition to the Arizona Supreme Court is unnecessary. *Id.*

Here, it is undisputed that direct review by the state courts of Petitioner's criminal conviction was concluded when the Arizona Supreme Court denied review on September 18, 1996. The time for seeking review was 90 days. The Petitioner's conviction became final on December 17, 1996. She filed her notice of post-conviction relief on October 7, 1996, and the petition on August 3, 1998. The one-year statute of limitations was tolled while the petition for post-conviction relief was pending in the state courts.

This is the question before the Court. Respondent argues that the petition for post-conviction relief was no longer pending as of October 17, 2000, when the Arizona Court of Appeals issued the decision denying the petition for post-conviction relief. The Petitioner argues that for the purpose of tolling the statute of limitation period for habeas relief, 28

U.S.C. 2244(d)(2), the state petition was pending until the mandate issued on November 30, 2000.

Since *Hemmerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007), the answer for tolling the habeas statute of limitations has been that a state petition for post-conviction relief becomes final *when appellate review is denied* because then there is nothing for the state courts to do and, therefore, nothing remains pending. *Id.* at 1077. As Magistrate Judge Velasco noted, *Hemmerle* is factually distinct from the procedural posture of this case. The court in *Hemmerle* considered the finality of a post-conviction petition where Hemmerle sought review from the Arizona Supreme Court after the state court of appeals denied him review, after the trial court denied him relief. The court concluded that once the state supreme court decides to deny review, the appellate decision is final.

Here, the court of appeals *granted review and denied the petition*. Celaya did not seek review of the court of appeal's decision. Under such circumstances, the Arizona Rules of Criminal Procedure governing appeals and other post-conviction relief, Rule 31.23, provides: "if there has been no motion for reconsideration and no petition for review filed, the clerk of the Court of Appeals *shall issue the mandate* at the expiration of the time for the filing of such motion or petition." Motions for reconsideration must be filed within 15 days after the filing of a decision by the appellate court. Rule 31.18. A petition for review is filed within 30 days after the filing of a decision or within 15 days after the clerk has mailed a notice of the determination of a motion for reconsideration. Rule 31.19. Because the appellate court issued a decision denying relief and petitioner did not seek review, the appellate court issued the mandate 30 days after it had issued the decision. Under Arizona law, this concluded appellate review. (R&R at 19-20 (citations omitted).

*Hemmerle* is inapplicable because there was no petition for review and no denial of review by any reviewing court. As Respondent notes, under the Arizona rules, there is no requirement for a mandate to issue from a denial of review. Under such circumstances, review is final when denied. There is nothing more for the reviewing court to do.

Here, the appellate court granted review and issued a decision, which became final when it issued the mandate as required by Rule 31.23. Here, once the appellate court issued its decision, it still needed to issue the mandate.

Speaking in respect to the one-year statute of limitations applicable to federal petitions for habeas relief pursuant to 28 U.S.C. § 2255, the Supreme Court of the United States wrote: "Finality has a long-recognized, clear meaning in the post-conviction relief context: Finality attaches in that setting when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). The Court explained that while Congress had left the term undefined in the federal habeas statute, presuming of course that the term would be defined in conformity with Court precedent, *id.,* it had defined the term in 28 U.S.C. § 2244(d)(1), the parallel statutory provision for state habeas petitions. Both define when a direct appeal becomes final as: the date the judgment becomes final by conclusion of direct review or expiration of the time for seeking such review, *id.* at 530-32. For a criminal defendant who does not file a petition for *certiorari* to the Supreme Court, the one-year limitation period starts to run when the time for seeking such review expires. *Id.* at 532. *See also*, *Wixom*, 264 F.3d 894, 897 (9th Cir. 2001) (describing finality the same for purposes of determining when a direct appeal is final under 28 U.S.C. §2244(d)(1)(A)).

For tolling purposes, however, state law determines finality. *See Bunney v. Mitchell*, 249 F.3d 1188, 1189 (9th Cir. 2001) (certifying the question to the California Supreme Court: "when is the summary denial of a petition for habeas corpus by the California Supreme Court final.") In *Hemmerle*, the court answered the question of when a decision to deny review is final under Arizona law analogously to the federal definition that finality for tolling purposes under 2244(d)(2) is when review is denied. But, *Hermerle* did not address the question of when a decision denying a post-conviction petition by the court of appeals is final where there is no request for review. This Court agrees with Magistrate Judge Velasco's answer: a decision of the Arizona Court of Appeals is final upon the issuance of the mandate.

In 1998, the Arizona Court of Appeals considered the question of when the statute of limitation period begins to run on a legal malpractice claim. *Thompson v. Holder*, 965 P.2d 82 (Ariz. App. 1998). The court held the claim accrues when the appellate process in the underlying litigation is completed or is waived by a failure to appeal. *Id.* Specifically, the court held the appellate process is completed when the court of appeals issues its mandate. *Id.* Relying on *Amfac Distribution Corp. v. Miller*, 673 P.2d 792, 796-98 (Ariz. 1983), the court wrote:

> [B]oth this court and the supreme court have pegged the date of accrual to the termination of the appellate process; the issuance of the mandate both accomplishes and formally signifies that termination. Third, the law might minutely accelerate finality by pegging accrual to the earlier date, but at the cost of setting a trap for the unwary-a trap perfectly illustrated by this case. As the law does not favor statutes of limitations, we decline to achieve so scant a gain-here a matter of four days-at so high a cost. And finally, the issuance of the mandate provides a "bright-line" event to count from; and in counting time, a bright-line rule serves all.

*Id.* at 351.

The Arizona Rules require a mandate to finalize a decision issued by the court of appeals. Rule 31.23. The Court agrees with the Magistrate Judge that under Arizona law, the Petitioner is entitled to statutory tolling because an Arizona appellate court decision is not final until the mandate issues. Additionally, the Court agrees with the Magistrate Judge that counsel in this case did not miscalculate the deadline, but relied in good faith on existing legal precedent, which in 2001, when he filed the federal Petition, conclusively established that a petition for post-conviction relief is pending in the Arizona courts until the date a reviewing court issues a decision and its mandate. (R&R at 22) (citations omitted); *see also Thompson*, 965 P.2d at 85.

## GROUND ONE: EXCLUSION OF DEFENSE WITNESSES

The Government's theory of the case was that Gina Celaya posed as a prostitute to convince the victim to pick her up, intending to steal his money and car-jack his truck. She drove out to the desert with him, possibly forcing him at gun-point to drive to the desert, where she shot him, and stole his money and truck.

1  The defendant took the witness stand and said she was walking down South Sixth
2  Avenue, when the victim stopped and offered her a ride, which she accepted because it was
3  late at night. He did not take her home, but instead drove to a wildcat dump in the desert,
4  where he asserted she was a prostitute and when he found out otherwise, he nevertheless
5  insisted on culminating a sex act. He frightened her, put her in fear of serious physical
6  injury and fear for her life. She shot him in self-defense.

7  Petitioner offered three defense witnesses. They would have testified "that on two prior
8  occasions the victim drove women he picked up as prostitutes to an isolated desert location
9  where he forcibly sexually attacked them, and that he had a reputation for violence among
10 prostitutes." (R&R at 30.) This would have corroborated her account, including: "1) that
11 the victim voluntarily offered her a ride; 2) that through his own initiative, he drove to the
12 isolated desert setting where he was found; 3) that he did so with the intent to engage in
13 sexual relations with her; and 4) that he was sexually assaultive and abusive with her when
14 they arrived." *Id.*

15 Relevant to the Petition, the trial court precluded as defense witnesses two prostitutes
16 and a bartender. The court held that "'where self-defense is asserted, as here, then the
17 defendant charged with homicide may be permitted to introduce evidence of specific acts of
18 violence by a deceased <u>only</u> when those acts were personally observed by the defendant or
19 made known to him (her) prior to the homicide.'" (R&R at 26) (citations omitted). The
20 court also held the witnesses' testimony was not relevant because it was based on the
21 unreliable recollections of a drug addict and was too speculative to meet the threshold for
22 admissibility to a jury. *Id.*

23 As noted by Magistrate Judge Velasco, "[a] state trial court's admission of evidence
24 under state evidentiary law will form the basis for federal habeas relief only where the
25 evidentiary ruling 'so fatally infected the proceedings as to render them fundamentally
26 unfair' in violation of the petitioner's due process rights." (R&R at 27 (citing *Mammal v.*
27 *Van de Camp*, 926 F.2d 918, 919 (9th Cir. 1991)) (emphasis added). The Court agrees with

the Magistrate Judge that this is such a case because the trial court's evidentiary rulings prevented the Petitioner from meaningfully presenting a complete defense. *Id.* at 28 (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), *Washington v. Texas*, 388 U.S. 14, 23 (1967)).

In making her decision, the state trial court relied on Rule 404(a) and 405(b). Character evidence is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except if it is offered by an accused in a homicide case to show that the alleged victim was the first aggressor. Rule 404(a)(2). Character evidence may only be offered by specific instances of conduct in a case in which character or a trait of character of a person is an essential element of a charge, claim, or defense. Rule 405(b). The violent or aggressive character of the victim is neither an element of the homicide offense nor self-defense, except for a claim of self-defense where the defendant personally observed the victim's violent character or it was made known to him prior to the homicide. *State v. Jackson,* 94 Ariz. 117, 121, 382 P.2d 229 (1963). Then the evidence is admitted because it has a bearing on the defendant's state of mind and the reasonableness of his belief that deadly force was necessary when it was used. *State v. Williams*, 685 P.2d 764, 767 (Ariz. App. 1984) (citations omitted).[1] Because the defendant admittedly did not know of the alleged violent or aggressive character of the victim, the trial court precluded the defense witnesses under Rule 404(a) and 405(b).

The trial court ignored admissibility under Rule 404(a)(2), where the character of the victim may be offered by the accused as evidence that the victim was the first aggressor, but only by proof as to reputation or opinion, under Rule 405(a). At a minimum, the witnesses should have been allowed to testify as to their opinions and the victim's reputation for

---

[1] "Nothing in the self-defense statute refers to the person's subjective beliefs or knowledge about the aggressor's history: the relevant inquiry is whether, under the circumstances during the event in question, an objectively reasonable person would believe it necessary to physically defend herself." (R's Objection to R&R (R Object) at 25.)

violence.  Arizona Rule 404(a) is the same as Rule 404(a) of the Federal Rules of Evidence. The Advisory Committee's Notes to the federal rule explain the "mercy rule"[2] "is so deeply imbedded in our jurisprudence as to assume almost constitutional proportions and to override doubts of the basic relevancy of the evidence."  Fed. R. Evid. 404, Advisory Committee Note : 1972 Proposed Rules, Note to Subdivision (a).

While Respondent's Objection discusses whether the evidence in question meets the definition of *modus operandi*, (R's Objection at 25-28), it was never argued that the precluded testimony should have been admitted under Rule 406, which allows evidence of the habit of a person relevant to prove that the conduct of the person on a particular occasion was in conformity with the habit or routine practice.  The Magistrate Judge did not consider admissibility of the witnesses' testimony to show *modus operandi,* "i.e., the victim's habit – of taking women to secluded parts of the desert and raping them," (Respondent's (R's) Objection at 25); the Magistrate Judge only noted that the evidence was inartfully referred to as the victim's modus operandi, (R&R at 31).

The Magistrate Judge found, "[t]he state courts erred by failing to fully consider the admission of specific act evidence under Rule 404(b) (the testimony of Ms. Larrivas and Ms. Carranza) for the purpose of corroborating Petitioner's version of events, and to show the victim's motive and intent to sexually assault Petitioner in order to ensure a fundamentally fair trial."  (R&R at 31.)  The prejudice to the defendant was further compounded because the State opened the door to such evidence when it attacked the defendant's credibility and

---

[2]The so-called "mercy rule" permits a criminal defendant to introduce evidence of pertinent character traits of the victim because the accused, whose liberty is at stake, may need "a counterweight against the strong investigative and prosecutorial resources of the government." *Belardo v. Virgin Islands*, 2009 WL 1106937, 6 (D.Virgin Islands 2009) (citing Rule 404 advisory committee note (citing C. Mueller & L. Kirkpatrick, Evidence: Practice Under the Rules, pp. 264-5 (2d ed.1999)); *see also* Richard Uviller, Evidence of Character to Prove Conduct: Illusion, Illogic, and Injustice in the Courtroom, 130 U. Pa. L.Rev. 845, 855 (1982) (the rule prohibiting circumstantial use of character evidence "was relaxed to allow the criminal defendant with so much at stake and so little available in the way of conventional proof to have special dispensation to tell the factfinder just what sort of person he really is").

argued the victim was a family man who was not intending to sexually assault the defendant, but was merely being "grandfatherly," i.e., a nice guy and giving her a ride home. *Id.*

The Petitioner challenges the trial court's preclusion as defense witnesses of two prostitutes, who both recognized the victim from his photograph on the news. The trial court also excluded the testimony of a bartender, who came forward during the trial when she recognized the victim's picture in the news.

The Court precluded witness Larrivas' testimony because there was no evidence to show that the defendant knew of the victim's violent character, (R's Objection to R&R, Ex. 10, Minute Entry; Ex. 7 Motions Hearing, 6/10/1994: TR at 3 (describing Larrivas' statement as very definite on ID and date and truck)), and precluded witness Carranza's testimony as too speculative to reach the threshold for admitting it to the jury, *id.*, Ex. 7: TR at 2-3 (disallowing Carranza testimony as too speculative to reach the jury; it would only confuse the jury and invite speculation, prejudicial effect would outweigh any probative value); TR at 8 (refusing to bootstrap with Larrivas' definitive testimony the speculative testimony of Carranza), *see also* TR at 3 (describing Tracy Stewart interview as consisting of astonishingly leading questions); TR 8-9 (disallowing statement by Tracy Stewart as falling somewhere between Larrivas and Carranza in regard to its speculative nature). During the trial, when the bartender came forward, the trial court found her testimony as wholly speculative because she identified the victim as a customer of a bar other than the Hideout, which was the bar frequented by the victim, and described him as being in the bar during a time previous to when he moved to Tucson, and she had not seen him since six to seven years before the murder. *Id.* at 23.

While Ms. Carranza was easily confused on details of her life, she like Ms. Larrivas testified with specificity and detail regarding her recall of the victim and how he had abused and scared her. (R's Objection to R&R, Ex. 1: Carranza Depo. 1/7/1993 (i.e., at TR 9 (admitting her memory was bad, but the reason she remembered him was because he scared her so bad)). The witnesses' testimony matched, generally, the victim regarding such things

as age, weight, build, where he worked, mannerisms such as always wearing a baseball cap, and that he drove a small light-colored truck with a camper shell. The witnesses' stories also matched several of the details claimed by the defendant, such as the victim initiating the pick-up and taking the women to the wildcat dump in the desert for sex and sexually assaulting them. This corroborative evidence was especially important because the state impeached the defendant by arguing she did not tell her friends of the sexual assault and accused her of making it up in response to Detective Thomson's interrogation after he suggested that if she shot the victim in self-defense she should say so and stop denying the shooting.

As the Magistrate Judge noted, the precluded witnesses' testimony was not presented in a vacuum. Not at issue in this habeas petition, three other witnesses had provided similar stories, bolstering the relevance and reliability of the two prostitutes and the bartender's testimony. (R&R at 32-33 (discussing the Garcia sisters' testimony about the victim's abusive acts toward women at the Hideout bar and testimony from another prostitute, Terry Stewart, that was similar to the testimony of Carranza and Larrivas).

Nevertheless, the court was persuaded that Ms. Carranza and the bartender's testimony was too speculative and unreliable to be presented to the jury. Respondent continues to argue that the witnesses were unreliable because they were drug addicts and prostitutes, with clouded memories, and it was uncertain that they were talking about the same man as the victim. The Court finds the picture painted by Respondent about these witnesses' credibility is exaggerated and misleading. (P's Response to R's Objection at 14-17.) The credibility of a witness' testimony is for a jury to decide, not a judge. *United States v. Smith*, 538 F.2d 1359, 1363 (9th Cir. 1976), *State v. Roberts,* 677 P.2d 280, 284 (Ariz. App. 1983). Credibility raises questions of whether a witness' testimony does in fact accurately reflect what took place as opposed to perception and memory in general. *Roberts*, 677 P.2d at 284. The latter determination is made by a trial court as a threshold assessment for admissibility of evidence depending on a witness' ability to observe, recollect and communicate the subject of the testimony. *Id.*

Here, the trial court found the evidence inadmissible under Rule 404(a), 405(b) and because it was too speculative. She never discussed admissibility of the defense witnesses' testimony under Rule 404(b), and the state appellate court only briefly considered Petitioner's Rule 404(b) arguments. (R&R at 30-31.)

Rule 404(b) allows specific instances of other crimes, wrongs, or acts by the victim to be admitted as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The defendant offered the testimony to rebut the state's charge that she pretended to be a prostitute to pick up the victim, intending to rob and murder him and car-jack his truck, and to show instead that the victim voluntarily offered her a ride, intending to solicit or force her to have sexual relations with him, drove on his own initiative to the isolated desert area and was sexually assaultive and abusive, which caused her to fear for her life and shoot him in self-defense.

Under Rule 404(b), a court decides admissibility based on four factors: 1) there must be proof of the prior bad act based on sufficient evidence; 2) the crimes or acts must not be too remote in time; 3) the prior conduct must be similar to the acts defendant is charged with, and 4) the evidence must prove an essential element of the offense. *Huddleston v. United States*, 485 U.S. 681, 690 (1988); 929 F.2d 1369, 1373 (9th Cir. 1990); *State v. Gulbrandson*, 906 P.2d 579, 593 (Ariz. 1995). In *Huddleston*, the Court explained that the trial court makes a preliminary finding that the government has proved the "other act" by a preponderance of the evidence before it submits the evidence to the jury. *Huddleston*, 485 U.S. at 682.

In Arizona, a prior bad act must be proved by clear and convincing evidence before it may be admitted against the defendant in a criminal case, *State v. Terrazas*, 944 P.2d 1194, 1198 (Ariz. 1997) (en banc). This heightened standard is applied to protect the defendant's interest in a fair trial because evidence of a defendant's prior bad act is generally more prejudicial than probative and "can easily tip the balance against the defendant." *Id.* (citing

*Uncharged Misconduct Evidence*, 1-SUM Cri. Just. 6,8 (1986)). In this case, the clear and convincing standard was contrary to the defendant's interest in a fair trial.

As the Magistrate Judge properly noted, the trial court's evidentiary mistake in precluding the defense witnesses, either to present opinion or reputation character evidence or prior bad acts evidence, will ONLY form the basis for habeas relief if it so fatally infected the proceedings as to render them fundamentally unfair in violation of the Petitioner's due process rights. By excluding these witnesses, all that remained before the jury was her testimony which was countered by testimony from her friends that she said she shot the guy and stole his truck, she had a gun and she was joy-riding in the victim's truck, and on cross examination, her admission that she never told anyone, including her friends, about being sexually assaulted or having to shoot the victim in self-defense until after her arrest when Detective Thomson suggested it would be in her best interest to stop denying the shooting if she had shot the victim in self-defense. The trial court admitted into evidence the victim's good character and the defendant's prior bad acts.

The Court agrees with the Magistrate Judge:

> Without the testimony of the three witnesses, there was very little reason for the jury to believe Petitioner's version of events. The testimony of those witnesses would have drastically altered the jury's perception of what happened the night Mr. Lopez was shot. There is no question that Petitioner admitted she shot the victim and took his truck. If Petitioner had presented testimony that corroborated her version of events, there is a strong chance the jury may have chosen to believe that while what happened before and after the events which occurred in the desert may have been an exercise in extremely poor judgment as well as a complete disregard for human life by Petitioner, that Petitioner's friends were lying, or Petitioner was lying when she told her friends how she obtained the truck.

(R&R at 37.)

The evidence precluded by the trial court was relevant and vital to the defense. Under Rule 403, relevant evidence may be precluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. These were minor interests compared to the importance of the precluded defense

- 13 -

witnesses. The Court agrees that the preclusion of these witnesses had a substantial and injurious effect on the verdict in Petitioner's case. (R&R at 34.)

The Court grants relief on ground one of the Petition. This ruling is on all fours with the recent Arizona appellate case *State of Arizona v. Fish*, 213 P.3d 258 (Ariz. App. 2009), where the court noted that most cases addressing Rule 404(b) admissibility go to show motive, opportunity, intent, and preparation on the part of the defendant, but held that the rule also applies to prior acts of alleged victims and third parties. *Id.* at 271. In *Fish*, the defendant was convicted of second degree murder for shooting and killing a man. Defendant testified that when he encountered the victim while on a nature walk, the victim's dogs attacked him. He shot into the ground in front of the charging dogs and scared them away. Then, the victim charged him screaming and yelling, looking crazy and enraged. *Id.* at 262. When the victim would not stop, even after the defendant pointed a gun at him and yelled for him to get back and stop, the defendant shot and killed him. *Id.* The defendant argued he acted in self-defense. There were no other witnesses to the incident.

The trial court allowed character witnesses to testify as to their opinions of the victim's and the dogs' propensities for aggression and violence, but would not allow any evidence of specific prior acts of aggression and violence in respect to the victim's relationships with dogs. The appellate court held that the trial court properly precluded specific act evidence under Rule 404(a)(2), but may have erred in precluding the evidence under Rule 404(b)(2). *Id.* at 263. The appellate court explained that the evidence was not offered to show the victim's character to prove disposition or propensity to acts of a particular type, and therefore it could be admitted under Rule 404(b) to show the victim's motive or intent or to corroborate the Defendant's version of events. *Id.* at 272. The court found that if offered to show the victim's state of mind, the evidence would necessarily relate to the defendant's state of mind, and would be inadmissible unless the defendant knew of the prior specific conduct. *Id.* "However, just as the superior court concluded the general reputation evidence about Victim's propensity to violence was relevant to corroborate the Defendant's description of what he faced just prior to the shooting, the specific act evidence was

- 14 -

similarly relevant to rebut the State's argument that Defendant fabricated or exaggerated the Victim's acts on the date of the shooting." *Id.* at 273.

Importantly, the court held the probative value of the specific act evidence for purposes of Rule 403 balancing would have been the enhancement of the defendant's testimony about self-defense because it bolstered his credibility and rebutted the state's argument that the defendant's story was fabricated. *Id.* Just as this Court noted in this case, the other acts evidence involved specific acts that were very similar to the facts described by the defendant in his plea of self-defense. The court found the trial court's balancing under Rule 403 was skewed because it assumed the specific act evidence was not even relevant and summarily concluded that it would have little probative value even though the key issue of self-defense turned upon the credibility of defendant's description of the event because he was the only living human witness to the shooting. The trial court erred in weighing a low probative value when the evidence was highly probative as to the accuracy and veracity of defendant's statement. *Id.* at 274. The risk of the jury using the evidence for an improper purpose is minimized by a limiting instruction. *Id.* 274.

In contrast, the character evidence related to the victim was highly sanitized with none of it reflecting how aggressive or violent the victim had become when he was confronted about being at a location with his dogs. The court found the error was not harmless and remanded the case for retrial with a directive to the trial court that it consider admissibility of the evidence under 404(b) using the balancing factors set out in the opinion. *Id.* In Petitioner Celaya's case, the trial court did not even allow a sanitized version, under Rule 404(a)(2), of opinion or reputation evidence regarding the victim's violent character. In this case, just as in *Fish*, the trial court erred in not admitting evidence of the victim's specific prior acts of violence and aggression. In this case, the error deprived the Petitioner of her constitutional due process rights to present a complete defense and a fair trial. Petitioner prevails on ground one of the Petition.

/////

**GROUND TWO AND THREE**

Petitioner argues that the trial court erred by refusing to admit Petitioner's tape-recorded statement in its entirety after the State used portions of it to impeach her. The Petitioner argues that the defense should have been allowed to admit the tape recording under the Rule of Completion, Ariz. R. Evid. R. 106.

The tape recording at issue in the Petition was her interrogation by Tucson Police Detective Thomson, when she initially denied the shooting but after the detective asked her whether the man had tried to harm her and told her this was her chance to say so, she made the self-defense claim. The state sought and was granted preclusion of the taped statements as self-serving hearsay. After the defendant took the stand and testified that she shot the victim in self-defense, the state used excerpts of the tape to impeach her. In an effort to rehabilitate the defendant on redirect, the defense attorney sought, but was denied, admission of the entire tape recording to show the context of the excerpts used by the state for impeachment. The trial court denied admission, without explanation, of the first 10-24 pages of the tape and ruled that the second portion of the tape would not be admitted because the witness had been adequately rehabilitated. The appellate court affirmed the trial court because Rule 106 applies only when proof is made through introduction of a statement, not through impeachment. On impeachment, the risk of misleading the jury is avoided by the witness explaining misperceptions and inconsistencies on redirect, rather than with past hearsay. (R&R at 37-41.)

As he did in respect to Petitioner's claims of error related to the preclusion of the defense witnesses, the Magistrate Judge noted that the rule of completeness was a question of Arizona evidence law. The Magistrate Judge only considered whether the evidentiary ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

1   The Petitioner cannot cobble together "clearly established"[3] Supreme Court precedent from *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988), the common-law rule of completeness, and general principles of due process. (P's Objection to R&R at 5) (citations omitted). Like the Magistrate Judge, this Court looked and found no clearly established Supreme Court precedent addressing the constitutionality of the Rule of Completeness or extending the protections of the Due Process Clause, the Compulsory Process Clause or the Confrontation clause to a trial court's exclusion of a defendant's otherwise inadmissible statement to rehabilitate a defendant after impeachment. (R&R at 41-42.) This Court also agrees with the Magistrate Judge that, if there was constitutional error committed by the trial court, it did not have a substantial and injurious effect or influence in the jury's verdict because, as noted by the appellate court, the defense had an opportunity on redirect to rehabilitate the defendant's credibility. *Id.* at 43. The Court dismisses ground two of the Petition.

The Court also dismisses ground three of the Petition because the state appellate court found the ineffective assistance of counsel claims, raised in Petitioner's second petition for post-conviction relief, were waived because she failed to raise them in the first petition for post-conviction relief. The Court is not persuaded by Petitioner's argument that the state's preclusionary rule was unclear at the time she allegedly violated it, which was when she filed the first state petition for post-conviction relief: August 3, 1998. This Court believes that the state preclusionary rule has been clear at least since the 1996 update to the comment to Rule 32.2: " . . . some issues not raised at trial, on appeal, or in a previous collateral proceeding may be deemed waived without considering the defendant's personal knowledge, unless such knowledge is specifically required to waive the constitutional right involved."

---

[3]*See* (R&R at 11-14 (discussing the threshold question under the AEDPA as to whether a petitioner seeks to apply a rule of law that was clearly establish at the time his state-court conviction became final.)

This mirrors the answer given by the Arizona Supreme Court in *Stewart v. Smith* to the question certified from the United States Supreme Court regarding the meaning of Rule 32.2, which was: "whether an asserted claim was of 'sufficient constitutional magnitude' to require a knowing, voluntary and intelligent waiver depended upon the merits of the particular claim or merely upon the particular right alleged to have been violated?" The Arizona Supreme Court answered, it was the latter. *Stewart v. Smith*, 46 P.2d 1067, 1071 (Ariz. 2002). The case certified by the Supreme Court questioned the understanding of the law in 1995, if a petitioner asserted ineffective assistance of counsel for the first time in a successive Rule 32 petition. The Arizona Supreme Court explained that the question of preclusion is determined by the nature of the right allegedly affected by counsel's ineffective performance. *Id.*

The acts and omissions by trial counsel that Petitioner raises in her ineffective assistance of counsel claim did not involve or affect any of the type of basic or personal rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial that would require a knowing, voluntary and intelligent waiver. Consequently, the ineffective assistance of counsel claims were waived by the failure to bring them in the first petition for post-conviction relief. The Magistrate Judge correctly found this state-preclusionary rule to be an independent and adequate procedural bar, (R&R at 49), forecloses federal review, *id.* at 45 (citations omitted).

**CONCLUSION**

After *de novo* review of the issues raised in the parties' Objections, this Court agrees with the findings of fact and conclusions of law made by the Magistrate Judge in his R&R. The Court dismisses grounds two and three of the Petition and grants relief on ground one of the Petition.

**Accordingly,**

**IT IS ORDERED** that the Report and Recommendation is adopted as the Opinion of the Court.

**IT IS FURTHER ORDERED** that the Second Amended Petition (document 34) is GRANTED IN PART AND DENIED IN PART.

**IT IS FURTHER ORDERED** that the Second Amended Petition is GRANTED on Ground One and DISMISSED on Grounds Two and Three.

**IT IS FURTHER ORDERED** that Respondents shall release Petitioner from custody unless, within 90 days from the entry of Judgment, retrial proceedings are initiated in state court.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment accordingly.

DATED this 25th day of February, 2010.

David C. Bury
United States District Judge